**IN THE COURT OF APPEALS OF IOWA**

No. 19-0972
Filed August 21, 2019

**IN THE INTEREST OF J.L. and J.L.,**
**Minor Children,**

**A.H., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.


　　A mother appeals the juvenile court decision terminating her parental rights.

**AFFIRMED.**


　　Jonathan Willier, Centerville, for appellant mother.

　　Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant

Attorney General, for appellee State.

　　Robert E. Breckenridge of Breckenridge Law, P.C., Ottumwa, guardian ad

litem for minor children.


　　Considered by Potterfield, P.J., Greer, J., and Gamble, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GAMBLE, Senior Judge.**

A mother appeals the juvenile court child in need of assistance (CINA) permanency order establishing termination of parental rights as a goal of permanency and the decision terminating her parental rights.[1] She claims the State failed to make reasonable efforts respecting visitation and family therapy with a goal of reunification. We find the State engaged in reasonable efforts to reunite the mother with her children and termination of the mother's parental rights is in the children's best interests. We affirm the decision of the juvenile court.

## I.     Background Facts & Proceedings

A.H., mother, and J.L., father, are the parents of J.L., born in 2002, and J.L., born in 2006. The mother and her paramour, K.C., have a history of domestic violence. The Iowa Department of Human Services (DHS) removed the children from the home on June 29, 2015, after K.C. violated a no-contact order by going to the mother's home. There were also concerns because of drug paraphernalia found in the home. DHS placed the children in foster care.

The juvenile court adjudicated the children to be in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (2015). The court stated, "Clearly, the repeated incidents of domestic violence in the home where the children reside with their mother perpetrated by mother's paramour (including one incident involving a claw hammer and another incident in which [K.C.] threatened to kill [the mother]) place the children in imminent risk to life or health."

---

[1] The mother raised the issue concerning the permanency order in her appeal but it is subsumed in the appeal of the order terminating parental rights. *See In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005). Therefore, we do not separately address the permanency order.

The mother had a substance-abuse evaluation, which resulted in a diagnosis of alcohol abuse. On April 9, 2016, police charged the mother with public intoxication and interference with official acts. Additionally, K.C. was charged with domestic abuse assault for an incident involving the mother.

In a permanency order filed June 28, 2016, the juvenile court stated, "The fear [the children] have of [K.C.] combined with [the mother's] insistence on continuing a relationship with him have bred a feeling of mistrust and resentment between the girls and their mother which has yet to be resolved."

The case continued over an extended period of time as DHS worked to reunite the children with the father.[2] That placement was ultimately unsuccessful.

During a permanency hearing in July 2017, the mother asked to increase her visits with the children. DHS reduced the visits from once a week to once every two weeks and from semi-supervised to fully supervised due to the mother's disruptive behavior during visits. The FSRP[3] provider testified that when the mother and the children are in the room together for visitation, "you can almost feel the tension in the air." The mother and the children participated in family counseling sessions for a period of time, but this was also discontinued based on the mother's behavior. The mother and the children felt they were not making any progress in family therapy. The mother felt that unless she was going to be a placement option, the focus needed to be on something different.

---

[2] On September 21, 2015, the children were placed in the care of their father. Due to the father's use of methamphetamine, the children were placed in foster care on December 2, 2016. The children were again placed in the care of the father on March 14, 2017. On July 7, 2017, the children were removed from the father.
[3] FSRP stands for Family Safety, Risk, and Permanency services.

K.C. was accused or convicted of domestic abuse of the mother five or six times. Most recently, a severe incident of domestic violence occurred in September of 2018, requiring hospitalization of the mother due to concern for her eyesight. On occasion, the mother would cover for K.C. The mother reported to DHS that K.C. was a really good person.

On January 25, 2019, the State filed a petition seeking to terminate the parents' rights. At the termination hearing, the mother testified if the no-contact order was dropped there was a possibility she would resume a relationship with K.C. She testified she would cut K.C. out of her life for her children but questioned why her relationship with K.C. matters if she does not have her children. However, DHS had no confidence the mother would ever put aside her relationship with K.C. in order to bring the children back to her home.

The DHS social work case manager assigned to the family testified the children feel their visits with the mother are not helpful and they see it as a waste of time. The mother admitted she does not work with FSRP to improve visitation. She does not do any parenting skills classes or anything else. She understands the girls hate her. The relationship between the children and their mother is actually worse now than it was when DHS first became involved in 2015. The case manager testified the children did not wish to have a relationship with the mother and have asked for termination of her rights.

Unfortunately, the children have had several foster care placements. While the younger child has expressed reservations about her current placement, the siblings are integrated in the home together. The older child is comfortable in her current placement and wishes to remain there long term. The younger child is less

comfortable but her best interests are served by placement with her sister for the time being. The children are adoptable and are open to adoption.

The juvenile court terminated the mother's parental rights under section 232.116(1)(f) (2019).[4] The court found there was continuing domestic violence in the mother's relationship with K.C. and she was unwilling to choose her children over him. The court noted the numerous services offered to the family. The court concluded termination of the mother's parental rights was in the children's best interests. The court also found none of the exceptions in section 232.116(3) should be applied. The mother appeals the juvenile court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State has the burden to prove the statutory grounds for termination of parental rights by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. Reasonable Efforts

The mother claims the State did not engage in reasonable efforts to reunite her with the children. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re*

---

[4] The father's parental rights were also terminated. His appeal was dismissed as untimely.

*L.M.*, 904 N.W.2d 835, 839 (Iowa 2017). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). "The concept of reasonable efforts broadly includes 'a visitation agreement designed to facilitate reunification while protecting the child from the harm responsible for the removal.'" *Id.* (quoting *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996)). "[DHS] has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

The mother asserts she should have had more visitation. However, there were periods of time when the mother did not attend visits and periods of time when the children refused to visit the mother. The mother sometimes exhibited very aggressive behavior during visits, where she would yell, scream, and make hurtful comments to the children. Based on the mother's conduct, the visits were reduced from once a week to once every two weeks and from semi-supervised to fully supervised. We conclude the visitation arrangements made by DHS were reasonable under the facts of the case.

The mother also claims family therapy should have been initiated earlier. The mother stated she got mad at a DHS case manager during a family therapy session and left. The mother testified:

> And then after that, [the therapist] said that he didn't feel like we were making any progress.
> And I didn't feel like we was making any progress either, to a point. I mean, I felt like it was good for the girls to talk, but I had— just kind of feel like that unless I'm actually an option for placement, it's not going to get anywhere, then the focus needs to be something different.

The DHS case manager stated family therapy was discontinued because of the mother's behavior. The case manager also testified the children did not believe family therapy was productive. The evidence shows none of the participants found family therapy to be helpful. There is nothing in the record to show it would have been more helpful if it had been initiated at a different time. We conclude the mother has not shown the State failed to engage in reasonable efforts to reunite her with the children.

## IV. Best Interests

The mother claims termination of her parental rights is not in the children's best interests. In considering the best interests of children, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

The mother states it would have been better to place the children in a guardianship, rather than terminate her parental rights. She believes it was unlikely the children would be adopted based on their ages, sixteen and twelve at the time of the termination hearing. The juvenile court addressed this issue and stated,

> Given the age of the children, their repeated removals and numerous placements, the length of the most recent removal, the

desire of both children to become integrated into a family, and the availability of other viable permanency options it is clear guardianship or long-term legal custody would not be appropriate.

The court concluded termination and adoption were the only available permanency options that would appropriately provide the children with the permanent, safe, and nurturing home they need. The juvenile court noted the children "had clearly expressed their desire for termination to occur so they can achieve permanency." The court also noted the children's current foster family "has indicated a willingness if not a desire to permanently integrate both [children] into their home."

We agree with the juvenile court's assessment and conclude the CINA permanency order and termination of the mother's parental rights are in the children's best interests. We also agree with the court's conclusion none of the exceptions to termination found in section 232.116(3) should be applied in this case.

We affirm the decision of the juvenile court.

**AFFIRMED.**